UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:15-CR-13-GFVT-HAI-4 |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JARROD L. CUPP, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 258), the Court considers reported violations of supervised release conditions by Defendant Jarrod L. Cupp.

District Judge Van Tatenhove entered Judgment against Defendant in January 2016 on Defendant's plea to one count of conspiracy to distribute a substance containing methamphetamine.  D.E. 146 (plea agreement); D.E. 155 (Judgment).  Defendant was sentenced to 52 months of imprisonment followed by five years of supervised release.  D.E. 155 at 2-3.  Defendant was released on November 14, 2018.

In April 2019, the United States Probation Office ("USPO") reported that Defendant had left the job he had held for two months.  Although Defendant "was not clear" with the probation officer as to why he was no longer working, investigation revealed he had been terminated due to "attendance issues along with his work performance."  Defendant was told to obtain new employment, and he got a job with a landscaping company.  The USPO requested no action be taken, and Judge Van Tatenhove approved that request.  D.E. 247.

In March 2021, the USPO requested, and obtained, a new condition requiring Defendant to immediately enroll in and successfully complete a 90-day inpatient substance abuse program. D.E. 250.  According to the USPO:

> On March 8, 2021, Cupp reported to the U.S. Probation Office in London, Kentucky, as directed.  This Officer advised Cupp a urine specimen would be collected for drug testing purposes, but prior to producing a urine specimen, he admitted to using methamphetamine.  Upon further questioning, Cupp admitted to using methamphetamine on multiple occasions from on or about February 14, 2021, through on or about March 5, 2021.  He signed a positive drug test admission report (Prob 4) admitting to the aforementioned use of methamphetamine.

> The USPO also noted that Defendant had

> no prior positive drug screens since his term of supervision began November 14, 2018.  He was referred to Lexington Counseling and Psychiatry for outpatient substance abuse treatment on November 14, 2018, and he successfully completed the program on February 29, 2020.  Cupp did not participate in the BOP RDAP program.

*Id.*

## I.

On August 31, 2021, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings.  The Report charges three violations.  According to the Report,

> On August 18, 2021, this Officer conducted a home visit for the purpose of monitoring compliance.  Upon arrival, this Officer asked Cupp to produce a urine specimen for drug testing purposes, and he was handed an instant drug test cup.  Cupp entered the bathroom while this Officer was in the living room talking with Cupp's aunt, and as this Officer entered the bathroom, he handed this Officer the test cup containing what appeared to be water.  This Officer asked Cupp if the liquid in the test cup was his urine, and he answered in the affirmative.  Upon further questioning, Cupp admitted to daily methamphetamine use from August 9, 2021, through his last use on August 16, 2021, and he subsequently signed a Positive Drug Test Admission Report (Prob 4), stating as such.  This Officer again asked Cupp about the liquid in the test cup, and he admitted to dipping water out of the toilet bowl in an attempt to pass it as his own urine.

2

Based on the admission to using methamphetamine, Violation #1 charges a violation of the condition that Defendant must not, among other things, use or possess a controlled substance except as prescribed by a physician.  This is a Grade C violation.

Also based on this use of methamphetamine, Violation #2 charges a violation of the condition prohibiting commission of another federal, state, or local crime.  Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Violation #3 charges a Grade C violation of the condition that Defendant "shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing required as a condition of release."  This violation is based on Defendant's admission "to dipping water from a toilet bowl into the instant drug test cup, in an attempt to pass it as his own urine."

On September 9, 2021, the USPO released an Addendum to the Report.  The Addendum charges two additional violations, but the government ultimately moved to dismiss these two more recent charges.

First, the Addendum charges in Violation #4 a Grade A violation of the condition that Defendant not commit another federal, state, or local crime.  According to the Addendum:

> On September 8, 2021, Cupp was charged in Laurel County District Court, London, Kentucky, case #21-F-0751, with Charge 1) Trafficking in a Controlled Substance, First Degree, First Offense (Two Grams or More of Methamphetamine) (KRS 218A.1412, a Class C felony). . . .  It is alleged the defendant was found with 11.7 grams of a crystal substance, believed to be methamphetamine, on his person.

3

Second, Violation #5 charges another violation of the condition prohibiting illegal drug possession.   Based on Defendant's charged conduct of possessing methamphetamine as described in Violation #4, this is a Grade C violation.   According to the accompanying citation, when U.S. Marshals arrested Defendant in London on September 8, a bag containing 11.7 grams of methamphetamine was found on his person.   Defendant's vehicle also contained a passenger (who was also arrested) and two stolen chain saws.   Lab results for the suspected methamphetamine (possibly crystal methamphetamine) were not available at the time of the final hearing.

Because the charges in the Addendum are to be dismissed, the Court considers the circumstances of the arrest described in the Addendum only for the limited purpose of assessing the sentencing factors of the need to protect the public and deter criminal conduct.

On September 10, 2021, the Court conducted an initial appearance on the Report and Addendum pursuant to Rule 32.1.  D.E. 264.   The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing.   At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id*.  Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal.  *Id*.

At the final hearing on October 5, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583.  D.E. 269.   The government moved to dismiss Violations #4 and #5, the violations in the Addendum.   Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1, #2, and #3.   *Id.*   For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each of these three violations as described

4

in the Report.  The United States thus established all three violations under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction.  Defendant pleaded guilty to conspiracy to distribute a methamphetamine mixture, a Class C felony.  *See* 21 U.S.C. § 846. Such a conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007).  Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1 and #2 and a Grade B violation for Violation #3.  Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 18 to 24 months.  USSG § 7B1.4(a).

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation.  *See* 18 U.S.C. § 3583(b) & (h).   Defendant's drug trafficking conviction carries no maximum term of supervised release.  *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the parties announced that Defendant would stipulate to Violations #1-3 and the government would move to dismiss Violations #4-5.  The government explained that its motion to dismiss the Addendum violations was a benefit the government offered in exchange for Defendant's stipulation to the Violations in the Report.  Defendant will be able to face the state charges in state court without having previously admitted to the conduct in this Court.  In this case, the parties were interested in resolving the federal matters prior to the state matters.  The government pointed out that the maximum effective Guidelines Range would be 24 months regardless of whether the most serious violation allegation was Grade B or Grade A.

The government requested a penalty of 24 months' incarceration with no further supervised release to follow.  The government said a top-of-the Range penalty was needed on account of the great breach of trust.  Defendant was shown leniency on two earlier instances of violation conduct that did not result in revocation.  Defendant's rather extensive criminal history was driven by his substance abuse.  And now his addiction is raging again, which threatens a return to criminal behavior.  As for no additional supervised release, the government argued that resources would be better allocated to someone else.  Defendant has been through treatment, but the treatment did not elicit compliance.  The government also observed that Defendant could be subject to additional incarceration and state supervision on the pending state charges.

The defense requested revocation with six months of imprisonment, to be followed by six months of home incarceration.  The defense also requested that Defendant's current term of supervised release be resumed, to terminate on November 13, 2023.  In support of the downward variance, the defense argued that Defendant had taken responsibility by signing the written admissions and stipulating to the three violations.  And he has *tried* to address his addiction issues by going through three treatment programs in the last ten years.  What is new is that Defendant's girlfriend, who lives with him, is two months pregnant with Defendant's first child.  The defense explained that an eight-month sentence (when Defendant has already been jailed for one month), would allow him to be released around the time the baby is due.  Thus, Defendant would be released when the baby was born and, while under home detention, would be there for the girlfriend and the child.  Defendant would even be able to go to work to support them.  The recommendation, the defense argued, would provide a chance for family stability.  The defense also stated that the girlfriend has epilepsy; she does not work and does not have a driver's license.

Defendant addressed the Court and explained that after he got out of rehab, he moved back to London.  But then he was around the same drug addicts as before.  He said it was not good for him to be here.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.  Congress mandates revocation in a case of this nature.  By statute, the Court must revoke Defendant because he possessed a controlled substance.  *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

7

Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance.  Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate.  *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines.  U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release.").  Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction.  *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release).  Based on the description in his PSR, Defendant was involved in a years-long methamphetamine distribution conspiracy.  But he does not appear to have been a major player.  According to his plea agreement, he distributed methamphetamine "at the street level" to individuals in the London area.  It is troubling that he has returned to meth use, having admitted to taking meth eight days in a row.

The Court next considers Defendant's history and characteristics.  In Defendant's favor is that he was successful for a while on supervision aside from the time he was not truthful about being fired from his job.  But in March 2021, he was caught using meth and was given treatment rather than facing revocation.  The Court also considers how Defendant's girlfriend is expecting his first child.  Hopefully this change and added responsibility will give him further motivation

8

to stay away from drugs and stay out of trouble.  Another aspect of his history is that he has received intensive drug treatment but almost immediately returned to daily meth use.

The Court is out of treatment options at this point (Defendant has completed three separate terms of inpatient substance abuse treatment), so the factor that considers the need for additional training and treatment is not weighty in this case.

Two other factors, the need to protect the public and the need to deter criminal conduct, do weigh heavily in this case.  Defendant's use of an illegal drug necessarily involves contact with drug trafficking.  And Defendant trafficked drugs before to support his habit.  And the circumstances of Defendant's recent arrest highlight the risk that Defendant could easily return to drug trafficking.  Also, meth trafficking in this area has recently shown itself to be violent.  So these two factors are key concerns in this case.

The most important factor in this case is the severe breach of the Court's trust.  The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender.  The particular conduct is an important but secondary issue.  *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.").  The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e).  Here, Defendant was shown grace in 2019 when his lack of candor with Probation did not result in revocation proceedings.  He was treated gently again last March when he was referred to treatment after admitting using meth.  Despite this lenient treatment, Defendant returned to meth use, admitting to using it eight times.  Any one of those uses could have resulted in a 24-month revocation sentence.  Defendant was also initially

deceptive, attempting to pass toilet water off as his own urine.  No downward departure from the Range is warranted under these circumstances.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities.  This factor is usually addressed by imposing a within-Guidelines sentence.  Although Defendant requested a below-Guidelines penalty, the record does not support such a variance.  The Court cannot articulate a reason for varying downward by ten months.  *See Johnson*, 640 F.3d at 205.

Instead, the Court recommends revocation with 24 months of imprisonment and no supervision to follow.  Twenty-four months is the minimum that is sufficient but not greater than necessary to address the seriousness of Defendant's violation conduct.  No further supervision is warranted because, given Defendant's history, success cannot be expected at this point.  The Court has employed all its tools to provide Defendant with help, but to no avail.  It is now up to Defendant himself to turn his life around for the sake of himself and his family.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon the government's motion, Violation #4 and Violation #5 be dismissed.

2. That, upon his stipulation, Defendant be found guilty of Violations #1-3.

3. Revocation with a term of imprisonment of 24 months with no additional supervision to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  Failure to make timely objection consistent with

10

the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.  If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 6th day of October, 2021.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**